## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GREEN SCENE, INC., | ) | No. 10 B 72521 |
| | ) | |
| Debtor. | ) | Judge Manuel Barbosa |
| | ) | |

## AGREED INTERIM AND PROPOSED FINAL ORDER
## AUTHORIZING DEBTOR TO USE CASH COLLATERAL
## AND GRANTING ADEQUATE PROTECTION TO PRIVATE BANK

GREEN SCENE, INC., an Illinois corporation, as a debtor and debtor-in-possession (the *"Debtor"*), filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U. S. C. §§ 101, et seq. (the *"Code"*), with this Court on May 17, 2010 (the *"Filing Date"*), and filed a Motion (the *"Motion"*) for the entry of an Agreed Interim Order authorizing the Debtor to use cash collateral and providing adequate protection relief to the Private Bank (the *"Bank"*).

Notice of the Motion was given to the Bank, to the Debtor's twenty largest unsecured creditors, to the United States Trustee for the Northern District of Illinois, Western Division, and to any other party entitled to notice under Bankruptcy Rule 4001(b), and such notice was appropriate under the circumstances and in light of the emergency nature of the Motion.

Pursuant to the Interim Orders, the Bank on May 19, 2010 and June 2, 2010 served by mail copies of a notice of the entry of the Interim Orders, together with a copy of the Interim Orders, to the twenty largest unsecured creditors of the Debtor, the United States Trustee for the Northern District of Illinois, Western Division, and all other persons entitled to notice under Bankruptcy Rule 4001(b).

## I. THE COURT HAS BEEN ADVISED THAT THE DEBTOR AND THE BANK HAVE STIPULATED TO THE FOLLOWING:

On the Filing Date, the Debtor filed a voluntary petition for relief under Chapter 11 of the Code. Since then, the Debtor has remained in possession of its assets and has continued to administer the affairs of its estate as a debtor-in-possession in accordance with §§ 1107 and 1108 of the Code.

A. As of the Filing Date, the Debtor was indebted to the Bank in the amount of $576,024.64 (the *"Bank's Claim"*), based upon promissory notes (the *"Notes"*) and other loan documents (collectively with the Note, the *"Loan Documents"*), executed by the Debtor, copies of which were attached to the emergency motion. The Bank's Claim is secured by a duly perfected, valid and enforceable security interest in —

the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

All Equipment, Inventory, Accounts, Instruments, Documents, Chattel Paper, Deposit Accounts, Letter-of-Credit Rights, Supporting Obligations, Investment Property and General Intangibles, whether now owned or hereafter acquired, as presently or hereafter in effect.

In addition, the word *"Collateral"* also includes all of the following, whether now owned or hereafter acquired, whether now existing or hereinafter arising, and wherever located:

(1) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(2) All products and produce of any of the property described in this Collateral section.

(3) All accounts, general intangibles, instruments, rents, moneys, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described in this Collateral section.

(4) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and

sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(5) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media;

(the *"Prepetition Collateral"*), and the cash collateral (as that term is defined in § 363(a) of the Code), generated therefrom (for purposes of this Order, the *"Cash Collateral"*).

B. The Bank's Claim is not subject to any defense or counterclaim or objection on any basis. Accordingly, the Debtor stipulates that the Bank's Claim should be allowed in the amount of $576,024.04 as of the Filing Date.

C. As described above, the Bank has an interest in the Cash Collateral. Accordingly, the Bank is entitled to adequate protection for the Debtor's use of its Cash Collateral under §§ 361 and 363(e) of the Code.

## II. BASED UPON THE MOTION, THE RECORD BEFORE THE COURT, AND THE COMBINED CONSENT OF THE DEBTOR AND THE BANK TO THE ENTRY OF THIS ORDER, THE COURT FINDS AS FOLLOWS:

A. The Debtor has provided such notice as was practicable under the circumstances to the Bank, the twenty largest unsecured creditors of the Debtor, the United States Trustee for the Northern District of Illinois, Western Division, and any other person entitled to notice under Bankruptcy Rule 4001(b).

B. No creditor's committee, as provided for under § 1102 of the Code, has yet been appointed in the case.

C.  Good cause has been shown for the entry of this Order.  Among other things, entry of this Order will minimize disruption of the Debtor's business operations, will increase the probability of the collection of the Debtor's receivables and the probability of maximizing any potential return to the Debtor's creditors.  In consideration for the consent given herein the Bank is entitled to the relief set forth in this Order.  The protections afforded the Bank's interests herein are fair under the circumstances and the entry of this Order is in the best interests of the Debtor, its creditors and its estate.

D.  The Bank and the Debtor have negotiated the terms and conditions of this Order in good faith and at arms-length and have offered sufficient evidence of the Bank's good faith in agreeing to this Order.

III.    **ACCORDINGLY, IT IS HEREBY ADJUDGED, ORDERED AND DECREED THAT:**

A.  Subject to the terms and conditions set forth below, the Debtor is authorized to use Cash Collateral in accordance with the operating budget attached as **EXHIBIT A** during the period beginning on the date of the entry of this Order and ending at 12:01 A.M. on March 30, 2011.

B.  The Debtor shall deposit all Cash Collateral in a debtor-in-possession account (the *"DIP Account"*), maintained at the Bank.  Robert Dore shall be the only authorized signer on the DIP Account.

C.  The Debtor shall prepare a monthly operating budget for July 2010 and for each subsequent month and shall deliver it to the Bank on or before the twenty-fifth (25th) day of the preceding month (the *"Budget"*).  The Budget must be approved by the Bank.  In the event the Bank does not approve the Budget, the Debtor may not use Cash Collateral except upon further order of Court.

-4-

D.  The Debtor is authorized to use Cash Collateral in the DIP Account only to pay for the expenses set forth in the approved Budget.

E.  Neither the Bank's agreement to the Debtor's use of Cash Collateral nor the Bank's approval of any Budget shall be construed as the Bank's approval of the purposes or amounts for which its Cash Collateral is expended, nor is this Order intended, nor shall it be construed as the Bank's consent to any claim under § 506(c) of the Code or to otherwise become liable for any cost, expense, disbursement, liability or obligation of any kind or nature payable by or on behalf of the Debtor.  This Order does not create a joint venture or partnership of any kind between the Debtor and the Bank.

F.  As adequate protection against the diminution of value of the Bank's interest in the Prepetition Collateral, the Bank is hereby granted, pursuant to §§ 361, 363 and 364 of the Code, valid, perfected and enforceable security interests in and liens upon all property of the Debtor and its estate, whether now existing or hereafter acquired or arising and wherever located, and all proceeds, rents, products or profits thereof (collectively, the ***"Postpetition Collateral"***).  The security interests in and liens on the Postpetition Collateral shall —

(1) at all times be senior to the rights of the Debtor and any successor trustee in these or any subsequent proceedings under the Code; and

(2) be subordinate only to valid, enforceable and non-avoidable liens and security interests existing as of the Filing Date.

G.  The security interests and liens herein granted —

(1) are in addition to all security interests, liens and rights of setoff existing in favor of the Bank on the Filing Date;

(2) are and shall be valid, perfected, enforceable and effective as of the date of commencement of the present proceedings without any further action by the Debtor or the Bank

and without the execution, filing or recording of any financing statements, security agreements, mortgages or other documents; and

(3) shall secure payment of the Bank's Claim in an amount equal to any diminution in value of the Bank's interest in the Prepetition Collateral (the *"Adequate Protection Obligation"*), which occurs during the pendency of the Debtor's bankruptcy case, whether such diminution is a consequence of the Debtor's use of the Prepetition Collateral, economic depreciation of the Prepetition Collateral, or otherwise.

H.  As additional protection for the interests of the Bank the Debtor shall pay to the Bank —

(1) on or before June 30, 2010, $2,770.00 representing interest only on the payment on the line of credit and the regular payment on the equipment loan; and

(2) thereafter on or before the last day of each month $2,770.00 per month until November 2010, at which time Debtor will pay an additional $2,070.00 per month representing interest only on the term loan; and

(3) as and when required to be paid under the Loan Documents (and otherwise upon request), and to the extent Cash is available after accounting for all budgeted expenditures, all reasonable fees and expenses for which the Bank is entitled to receive reimbursement pursuant to the terms of the Loan Documents and all fees and expenses incurred in connection with or in preparation for the Debtor's bankruptcy proceedings (including, without limitation, fees and expenses arising in connection with the negotiation and preparation of this Order), to the extent the Bank was entitled to receive such category of fee or expense pursuant to the Loan Documents; provided, however, that the Debtor's payment of such interest, fees and expenses shall be provisional in nature pending the allowance of such claims pursuant to § 506(b) of the Code.

(4) The Debtor agrees to provide to The Private Bank a report detailing all of the accounts receivable paid and received by the Debtor within six months prior to May 17, 2010. Further, this report shall also detail what happened to any such funds received and detail the current whereabouts of said funds.

(5) The Debtor operates at the property commonly known as 3515 Stern Avenue, St. Charles, Illinois. Said property is owned by the Debtor's president, Mr. Robert Dore, and is encumbered by a mortgage in favor of The Private Bank. The Debtor is obligated to pay the sum of $6,567.60 under its lease with Mr. Dore and is obligated to pay to Mr. Dore all real estate taxes for said property. On or before the last day of each month, the Debtor agrees to pay to Mr. Dore as rent and Mr. Dore agrees to pay to The Private Bank as mortgage payments monthly payments in the amount of $6,567.60.

(6) The Debtor agrees and acknowledges that it is delinquent in payment of real estate taxes for the property commonly known as 3515 Stern Avenue, St. Charles, Illinois, and that said taxes were sold and redeemed by The Private Bank. The total delinquent amount for said real estate taxes exceeds $42,000.00. The Debtor agrees to pay to Mr. Dore and Mr. Dore agrees to thereafter immediately pay to The Private Bank beginning on June 30, 2010 and continuing on the last day of each month until November 30, 2010 the sum of $2,500.00, to be applied to the delinquent taxes due to The Private Bank. Beginning on December 31, 2010 and continuing thereafter on the last day of each month, the Debtor agrees to pay to Mr. Dore and Mr. Dore agrees to thereafter immediately pay to The Private Bank monthly payments in the amount of $12,500.00 to be applied to the delinquent taxes due to The Private Bank, until said taxes are paid in full, including any amount due for the second installment of 2009 taxes. The Debtor agrees to pay the 2010 real estate taxes on its own, on time.

-7-

I.  If the Bank hereafter requests the Debtor to execute and deliver to the Bank financing statements, mortgages or other instruments or documents considered by the Bank to be necessary or desirable to further evidence the perfection of the liens and security interests granted in this Order, the Debtor is hereby authorized to execute and deliver those financing statements instruments and documents.

J.  Within five (5) business days of the date of this Order, the Debtor shall deliver to the Bank a certificate of insurance evidencing coverage of the Prepetition Collateral to the extent of its full insurable value, showing the Bank as a loss payee, and showing full payment of the premiums therefor.

K.  On or before the twenty-fifth (25th) day of each month the Debtor shall prepare and send to the Bank c/o Thomas Lester, Matthew Hevrin, Hinshaw & Culbertson, 100 Park Avenue, Rockford, IL 61105-1389, a copy of the Monthly Chapter 11 Business Operating Reports required to be filed for the previous month with the United States Trustee and the Clerk of the Court pursuant to Bankruptcy Rule X-1007 and the Guidelines for Debtors-in-Possession promulgated by the United States Trustee (the *"Operating Reports"*).

L.  This Order does not constitute (1) a determination of adequate protection of the interest of the Bank in the Prepetition Collateral and the Cash Collateral, and the Bank may at anytime pursue a motion for relief from the automatic stay or for adequate protection of its interests in the Prepetition Collateral or Cash Collateral; (2) a waiver of any right of the Bank, at anytime, to file a motion to dismiss or convert, a motion for the appointment of an examiner or a trustee, or to assert any other rights, claims, remedies or defenses available to it; (3) a waiver of any right or claim which the Bank may have arising from the Debtor's conduct or improper use of the Cash Collateral prior to the entry of this Order; or (4) a waiver of any right or claim which the Bank may have arising from the Debtor's prepetition use of the Prepetition Collateral. The Debtor may

oppose any relief sought by the Bank for adequate protection, to modify the automatic stay, to

convert or dismiss this Chapter 11 case or to appoint a Chapter 11 trustee or examiner. However,

and any such proceeding the stipulations and admissions of the Debtor contained herein shall

remain binding upon the Debtor.

M. The Debtor expressly agrees that during the term of this Order it shall not seek, support or

permit the imposition of any lien, mortgage, deed of trust or security interest with priority senior,

equal or junior to the security interest of the Bank in the Prepetition Collateral or Cash Collateral.

To the extent that the Internal Revenue Service, the Illinois Department of Revenue and the

Illinois Department of Employment Security have an interest in the Cash Collateral, those

creditors are granted replacement liens in the priority amount existing on the date the case was

filed.

N. The failure of the Debtor to perform its obligations under this Order shall constitute a

default. If the Bank gives notice of the default and such default is not cured within ten (10)

business days of the date of such notice, then (1) the Debtor's authority to use Cash Collateral

shall be automatically terminated; and (2) the Bank shall be automatically granted relief from the

automatic stay with respect to the Prepetition Collateral and the Cash Collateral. Notice of

default shall be given in the manner and to the persons prescribed by Bankruptcy Rule 4001(b).

O. Upon appointment by the United States Trustee of a statutory committee in this Chapter

11 case, the Debtor shall serve promptly on counsel to such committee a copy of this Order. This

Order shall continue on a final basis and remain in full force and effect and constitute final

authority for the financial accommodations contemplated by this Order, and any objection by any

party in interest to the terms of this Order and the relief requested in the Motion shall be deemed

forever waived. The provisions of this Order shall remain in full force and effect unless modified

or vacated by other subsequent order of this Court. If any or all of the provisions of this Order

are hereafter modified, vacated or stayed by subsequent order of this Court or any other court,

such stay, modification, or vacation shall not affect the validity and enforceability of any lien,

priority, or other benefit authorized hereby with respect to the Adequate Protection Obligation

incurred in the intervening period.

P.   The automatic stay provisions of § 362 of the Code are hereby vacated as to the Bank to

the extent necessary to implement the terms of this Order.

Q.   The subject of this Order is a core proceeding within the meaning of 28 U.S.C. § 157.

This Order is immediately applicable and valid and fully effective upon its entry.

R.   Debtor shall send a copy of this Order to the twenty largest unsecured creditors, secured

creditors,  and all parties on the service list.  Should no objections be filed within ~~fifteen (15)~~ fourteen (14)

days, this Order sh~~all become final~~ ENTERED ~~on~~ 30, 2010.

JUN 1 6 2010

Dated: _____, 2010.
~~MANUEL BARBOSA, BANKRUPTCY JUDGE~~
~~UNITED STATES BANKRUPTCY COURT~~


                                    _____
                                    Manuel Barbosa, Bankruptcy Judge